FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

2019 MAY 31  AM 8: 56

| | |
|---|---|
| UNITED STATES OF AMERICA <br> ex rel. JENNIFER RODRIGUEZ, <br><br> STATE OF FLORIDA <br> ex rel. JENNIFER RODRIGUEZ, <br><br> Plaintiffs-Relators, <br><br> v. <br><br> SRIKIRAN POTHAMSETTY, M.D.; <br> ORLANDO GASTROENTEROLOGY, P.A.; <br> MILLENIA SURGERY CENTER, L.L.C.; <br> ANESTHESIA ASSOCIATES OF GREATER <br> ORLANDO, LLC; ANESTHESIOLOGY <br> PROFESSIONAL SERVICES, INC.; and <br> SURGERY PARTNERS, <br><br> Defendants. | Case No. 6:19-CV-1007-ORL-41-LRH <br> **JURY TRIAL DEMANDED** <br> **FILED UNDER SEAL** |

## FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Relator Jennifer Rodriguez ("Relator") brings this action on behalf of herself,

the United States of America, and the State of Florida against Defendants Srikiran

Pothamsetty, M.D.; Orlando Gastroenterology, P.A.; Millenia Surgery Center,

L.L.C.; Anesthesia Associates of Greater Orlando, LLC; Anesthesiology Professional

Services, Inc.; and Surgery Partners (collectively, "Defendants") for violations of the

federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("federal FCA"), and of the Florida

False Claims Act, sections 68.081, *et seq.*, Florida Statutes ("Florida FCA")

(collectively, the "False Claims Act").

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and (b), and 28 U.S.C. §§ 1331, 1345.

3.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as one or more of the defendants transacts business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

4.     As required by the federal FCA, 31 U.S.C. § 3730(b)(2), Relator has provided to the Attorney General of the United States and the United States Attorney for the Middle District of Florida a statement of all material evidence and information related to the Complaint ("Disclosure Statement"). As required by the Florida FCA, Relator has provided the Disclosure Statement to the Attorney General and Chief Financial Officer for the State of Florida.

5.     The Disclosure Statement includes attorney-client communications and work product of Relator's attorneys and is submitted to the Attorney General of the United States and the United States Attorney for the Middle District of Florida in their capacities as potential co-counsel in this litigation; therefore, the Disclosure Statement is confidential and protected by the joint prosecutorial privilege.

## GOVERNMENT HEALTHCARE PROGRAMS

6.     Title XVIII of the Social Security Act, U.S.C. §§ 1395, *et seq.,* establishes the Health Insurance for the Aged and Disabled Program, known as the Medicare program. The Secretary of the United States Department of Health and Human

Services ("HHS") administers the Medicare Program through the Centers for Medicare and Medicaid Services ("CMS").

7.     The Medicare program is comprised of four parts. Medicare Part A ("Hospital Insurance") provides basic insurance for the costs of hospitalization and post-hospitalization care. 42 U.S.C. §§ 1395c-i-5. Medicare Part B ("Medical Insurance") is a federally subsidized, voluntary insurance program that covers the fee schedule amount for doctors' services, outpatient care, medical supplies, and laboratory services. 42 U.S.C. §§ 1395j-w-5. Medicare Part C ("Medicare Advantage Plans") is a plan offered by private insurers that contract with Medicare to provide Part A and Part B benefits. 42 U.S.C. §§ 1395w-21-w-28. Medicare Part D ("Prescription Drug Coverage") is a plan offered by private insurers approved by Medicare to provide basic insurance for prescription drugs. 42 U.S.C. §§ 1395w-101-w-154.

8.     Reimbursement for Medicare Part A claims is made by the United States through CMS. Hospitals submit Medicare Part A claims directly to CMS, which in turn makes a standard, bundled payment based on a DRG diagnostic code.

9.     Reimbursement for Medicare Part B claims is made by the United States through CMS. CMS, in turn, contracts with fiscal intermediaries to administer and pay Medicare Part B claims from the Medicare Trust Fund. 42 U.S.C. § 1395(u). In this capacity, the fiscal intermediaries act on behalf of CMS. 42 C.F.R. § 421.5(b). Separate payments are made for each CPT procedural code listed on the Medicare Part B claims. *See* 45 C.F.R. §§ 162.1000, 162.1002, 162.1011 (adopting the Current

Procedural Terminology Coding Manual published by the American Medical Association (the "CPT Manual")).

10.     Reimbursement for Medicare Part C claims is made by the United States through CMS. CMS makes fixed monthly payments to each Medicare Choice organization for each enrolled individual, i.e., a capitated payment.

11.     Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.*, establishes the Medicaid program, a federally assisted grant program for the States. Medicaid enables the States to provide medical assistance and related services to needy individuals. CMS administers Medicaid on the federal level. Within broad federal rules, however, each state decides who is eligible for Medicaid, the services covered, payment levels for services, and administrative and operational procedures.

12.     At all times relevant to this Complaint, the United States provided funds to the States through the Medicaid program pursuant to Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.* Enrolled providers of medical services to Medicaid recipients are eligible for payment for covered medical services under the provisions of Title XIX of the 1965 Amendments to the Federal Social Security Act.

13.     TRICARE is a government-funded program that provides medical benefits to retired members of the Uniformed Services and to spouses and children of active duty, retired, and deceased members, as well as reservists who were ordered to active duty for thirty (30) days or longer. The program is administered by the Department of Defense and funded by the federal government.

14.     Together, the programs described above, and any other government-funded

healthcare programs, are referred to herein as "Government Healthcare Programs."

## SERVICES MUST BE MEDICALLY NECESSARY AND PERFORMED ECONOMICALLY

15. Reimbursement practices under all Government Healthcare Programs closely align with the rules and regulations governing Medicare reimbursement. The most basic reimbursement requirement under Medicare, Medicaid, and other Government Healthcare Programs is that the service provided must be reasonable and medically necessary. *See, e.g.*, 42 U.S.C. § 1395y(a)(1)(A) (Medicare does not cover items or services that "are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."); 5 U.S.C. § 8902(n)(1)(A) (FEHBP will not cover any treatment or surgery that is not medically necessary); 32 C.F.R. § 199.6(a)(5) (TRICARE provider has an obligation to provide services and supplies at only the appropriate level and "only when and to the extent medically necessary."); 42 C.F.R. §§ 411.15(k)(1), 411.406; *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) ("Although the standard of 'medical necessity' is not explicitly denoted in the Medicaid Act, it has become a judicially accepted component of the federal legislative scheme."); *United States v. Rutgard*, 116 F.3d 1270, 1275-76 (9th Cir. 1997) (holding that TRICARE and the Railroad Retirement Health Insurance Program follow the same rules and regulations as Medicare, citing, *e.g.*, 32 C.F.R. § 199.4(a)(1)(i)).

16. Healthcare providers must certify that services or items ordered or provided to patients will be provided "economically and only when, and to the extent,

medically necessary" and "will be of a quality which meets professionally recognized standards of health care" and "will be supported by evidence of medical necessity and quality." 42 U.S.C. § 1320c-5(a)(1)-(3); *see also* 32 C.F.R. § 199.6(a)(5) (TRICARE services and supplies must "meet[] professionally recognized standards of health care [and be] supported by adequate medical documentation . . . to evidence the medical necessity and quality of services furnished, as well as the appropriateness of the level of care.").

17.     These requirements prohibit defendants from manipulating billing procedures in "an intentionally wasteful manner" that maximizes their own economic benefit while providing no patient benefit. *United States ex rel. Kneepkins v. Gambro Healthcare, Inc.*, 115 F. Supp. 2d 35, 41-42 (D. Mass. 2000). Thus, "while there is no requirement that the least costly alternative treatment be used," requests for payment become false when they are the result of "policies to artificially (i.e., unreasonably and unnecessarily) increase the quantity of items and amount of services provided to their patients without regard to medical necessity." *United States ex rel. Vainer v. Davita, Inc.*, 2012 WL 12832381, at *6 (N.D. Ga. Mar. 2, 2012).

18.     Providers who wish to be eligible to obtain Medicare reimbursement must certify, *inter alia*, that they agree to comply with the Medicare laws, regulations and program instructions that apply to them, and that they acknowledge, *inter alia*, that payment of claims by Medicare is conditioned upon the claim and the underlying transaction complying with all applicable laws, regulations, and

-6-

program instructions. *See, e.g.,* Form CMS-855A (for institutional providers); Form CMS-855S, at 24 (for certain suppliers); Form CMS-855I (for physicians and non-physician practitioners).

19.     Claims submitted by healthcare providers to Government Healthcare Programs contain similar representations and certifications. *See, e.g.,* Forms CMS-1500 (paper provider claim form used for Medicare, Medicaid, TRICARE, FEHBP, and OWCP); 837P (electronic version of form 1500); 1450 (UB04 – institutional provider paper claim form used for Medicare and Medicaid); 837I (electronic version of form 1450). When submitting a claim for payment, a provider does so subject to and under the terms of his certification to the United States that the services were delivered in accordance with federal law, including, for example, the relevant Government Healthcare Program laws and regulations. Government Healthcare Programs require compliance with these certifications as a material condition of payment, and claims that violate these certifications are false or fraudulent claims under the False Claims Act. CMS, its fiscal agents, and relevant State health agencies will not pay claims for medically unnecessary services or claims for services provided in violation of relevant state or federal laws.

## THE ANTI-KICKBACK STATUTE

20.     The Anti-Kickback Statute (AKS) prohibits the knowing and willful offering, paying, solicitation, or receipt of remuneration in cash or in kind to induce or reward patient referrals or the generation of business involving any item or service

payable by Federal Insurance, including Medicaid, Medicare, and Tricare. 42 U.S.C. §1320a–7b.

21.    Pursuant to the AKS, a claim that includes items or services resulting from a violation of the AKS constitutes a false or fraudulent claim for purposes of the False Claims Act. 42 U.S.C. § 1320a-7b(g).

22.    Compliance with the Anti-Kickback Statute is material to claims for payment pursuant to the CMS-855O Medicare Enrollment Application, which conditions payment on compliance with the statute, and case law that has determined that violations of the Anti-Kickback Statute are material. *See U.S. ex rel. Lutz v. Berkeley Heartlab, Inc.*, 2017 U.S. Dist. LEXIS 138722, at *9 (D.S.C. Aug. 27, 2017) (applying common sense and weight of authority).

23.    The State of Florida has its own Anti-Kickback Statute, Fla. Admin. Code 59G-1.050(11), which, *inter alia*, prohibits payment in return for referring an individual to a person for furnishing any service for which payment may be made under the Florida Medicaid program.

**THE FEDERAL STARK AND TRICARE CONFLICT OF INTEREST LAWS**

24.    Section 1877 of the Social Security Act (42 U.S.C. § 1395nn), also known as the physician self-referral law and commonly referred to as the "Stark Law," prohibits a physician from making referrals for certain designated health services ("DHS"), including clinical laboratory services, radiology services, and inpatient or outpatient hospital services, payable by Medicare or Medicaid to an entity with which the physician has a financial relationship, unless an exception applies.

25.     In enacting the statute, Congress found that improper financial relationships between physicians and entities to which they refer patients can compromise the physician's professional judgment as to whether an item or service is medically necessary, safe, effective, and of good quality. Congress relied on various academic studies consistently showing that physicians who had financial relationships with medical service providers used more of those providers' services than similarly situated physicians who did not have such relationships. The statute was designed specifically to reduce the loss suffered by the Medicare Program due to such increased questionable utilization of services, but the Stark Law also applies to Medicaid claims. *See generally United States v. Rogan*, 459 F. Supp. 2d 692, 722-23 (N.D. Ill. 2006).

26.     Under the Stark Law, a physician (or an immediate family member of such physician) is prohibited from making referrals to an entity with which he or she has a financial relationship for designated health services payable by Medicare or Medicaid. In addition, providers may not bill Medicare or Medicaid for designated health services furnished as a result of a prohibited referral, and no payment may be made by the Medicare or Medicaid programs for designated health services provided in violation of 42 U.S.C. § 1395nn(a)(1). *See* 42 U.S.C. §§ 1395nn(g)(1), 1396b(s).

27.     Under the Stark Law, unless the relationship falls under a Safe Harbor, "a physician who has a direct or indirect financial relationship with an entity, or who has an immediate family member who has a direct or indirect financial relationship

with the entity, may not make a referral to that entity for the furnishing of DHS for which payment otherwise may be made under Medicare.... [A] referral made by a physician's group practice, its members, or its staff may be imputed to the physician if the physician directs the group practice, its members, or its staff to make the referral or if the physician controls referrals made by his or her group practice, its members, or its staff." 42 C.F.R. § 411.353(a).

28.     The Stark Law broadly defines prohibited financial relationships to include a direct or indirect "ownership or investment interest in the entity" or a direct or indirect "compensation arrangement," *i.e.*, any remuneration between a physician and an entity. *See generally* 42 C.F.R. § 411.354(a)(1).

29.     "Compensation arrangements" consist of any remuneration between a physician and an entity. 42 C.F.R. § 411.354(c). Like ownership interests, compensation arrangements can be direct or indirect. A direct compensation arrangement exists if there is no intervening person between the physician (or a member of his or her immediate family) and the entity providing, for example, a lab test. An indirect relationship exists if there is an unbroken chain of persons or entities that have financial relationships (either an ownership or investment interest or a compensation arrangement), between the referring physician (or immediate family member) and the entity conducting the tests, if the referring physicians receives compensation varying with volume or value of referrals, and if the entity furnishing the lab test has actual knowledge, or acts in reckless disregard or deliberate ignorance, of the fact that the referring physician is receiving

compensation varying with the volume or value of referrals. 42 C.F.R. § 411.354(b)(5), (c)(2).

30.    "No Medicare payment may be made for a designated health service that is furnished pursuant to a prohibited referral." 42 C.F.R. § 411.353(c).

31.    Violations of the Stark Law may subject the physician and the billing entity to exclusion from participation in Government Health Care Programs and various financial penalties, including: (a) a civil money penalty of up to $15,000 for each service included in a claim for which the entity knew or should have known that the payment should not be made; and (b) an assessment of three times the amount claimed for a service rendered pursuant to a referral the entity knows or should have known was prohibited. *See* 42 U.S.C. §§ 1395nn(g)(3), 1320a-7a(a).

32.    TRICARE will likewise deny any claim where an individual contracted to the United States Government has the "apparent or actual opportunity to exert, directly or indirectly, any influence on the referral of [TRICARE] beneficiaries to himself/herself or others with some potential for personal gain or the appearance of impropriety." 32 C.F.R. § 199.9(d)(1). Claims subject to "conflict of interest" in this way will be denied. 32 C.F.R. § 199.9(d)(2). For ease of reference, the Stark Law and the TRICARE regulations will be collectively referred to as "the Stark Laws" in this Complaint.

## PARTIES

33.    Defendant Dr. Srikiran "Sri" Pothamsetty is a gastroenterologist and owner/operator of Orlando Gastroenterology, P.A.

34.     Dr. Pothamsetty's NPI is 1821190562.

35.     Orlando Gastroenterology, P.A.'s primary office is located at 1507 S. Hiawassee Rd., Suite 105, Orlando, FL 32835.

36.     Orlando Gastroenterology's NPI is 1912002619.

37.     Defendant Surgery Partners—a nationwide operator of surgical facilities—is made up of numerous entities, including Surgery Partners, Inc.; Surgery Partners, LLC; Surgery Partners of Millenia, LLC; Millenia Surgery Center, L.L.C.; and Surgery Center Holdings, Inc.

38.     Defendant Millenia Surgery Center, L.L.C. ("Millenia") is an ambulatory surgical center ("ASC") located at 4901 Vineland Rd., Orlando, FL 32811.

39.     Millenia is owned and operated by Dr. Pothamsetty and Surgery Partners, as well as Drs. Richard Smith, Sanjay Khubchandani, and John Bazata.

40.     Dr. Pothamsetty is the medical director for Millenia.

41.     Millenia's surgical NPI is 1881736734.

42.     Millenia's anesthesia NPI is 1366898819.

43.     Surgery Partners performs the management and billing functions for Millenia.

44.     Defendant Anesthesia Associates of Greater Orlando, LLC ("AAGO") is an anesthesia service provider.

45.     AAGO is owned by Dr. Pothamsetty.

46.     AAGO's NPI is 1316495989.

47. Defendant Anesthesiology Professional Services, Inc. ("APS") is an anesthesia service provider.

48. APS is owned by Surgery Partners.

49. APS's NPI is 1902856891.

50. Relator Jennifer Rodriguez has worked for Millenia since December 2018.

51. Although Relator's official role is as a charge nurse and inventory manager, she was expressly hired by Millenia to act as its office administrator.

52. As part of her training as office administrator, Relator has access to Millenia's billing and operations policies, procedures, and business records.

## FACTUAL ALLEGATIONS

### *Improper Referrals of Anesthesia Services*

53. In 2009, APS signed a ten-year agreement with Millenia to be its exclusive provider of anesthesiology services.

54. Under the terms of this agreement, Millenia bears all the costs of the anesthesiology services, including providing and maintaining facilities, equipment, supplies, utilities, janitorial, laundry, and support services; employing administrative, clerical, technical, and other personnel; and providing office space.

55. APS has no obligations under the agreement except to perform and bill for its professional services.

56. As Surgery Partners is an owner of both Millenia and APS, Surgery Partners receives improper remuneration for every anesthesia service referred by Orlando Gastroenterology and/or Millenia to APS.

-13-

57.    Relator is not aware of any subsequent amendments, extensions, renewals, or other written agreements between Millenia and APS.

58.    In or about 2016, Millenia expanded from one suite (150) to two suites (150 and 190).

59.    As part of the owners' agreement, in return for Dr. Pothamsetty paying for much of the expansion, some of the providers working for APS were moved to a new entity, AAGO, so that Dr. Pothamsetty could bill for anesthesia services in the new suite and recoup his investment quicker.

60.    Relator is not aware of any written agreement between Millenia and AAGO.

61.    Since that expansion, Millenia is divided into two suites at the Vineland location: Suite 150 and Suite 190.

62.    Suite 150 is the "sterile" suite. It has 2 operating rooms. It is used for procedures in neurosurgery, podiatry, orthopaedics, and plastics.

63.    It is Millenia's policy that providers performing procedures in Suite 150 are generally not allowed to use any anesthesia provider other than APS.

64.    APS still provides and submits claims, including to Government Healthcare Programs, for nearly all the anesthesia services for Suite 150, resulting in improper remuneration to surgery partners in exchange for referrals.

65.    Millenia submits claims to Government Healthcare Programs for the facility it provides to their respective beneficiaries in Suite 150.

66.    APS performs services at other facilities, but they are all owned by Surgery Partners: for example, Park Place Surgery Center; West Chase Surgical Center;

Lake Worth Surgical Center; Medical Village Surgical Center; and Miami Surgical Center.

67.     APS is wholly dependent on referrals from Millenia and other Surgery Partners entities to remain in business.

68.     Suite 190 is the "clean" suite. It has 4 procedure rooms. It is used for procedures in gastroenterology, pain management, and plastics.

69.     AAGO provides nearly all the anesthesia services for Suite 190.

70.     It is Millenia's policy that providers performing procedures in Suite 190 are generally not allowed to use any anesthesia provider other than AAGO.

71.     AAGO does not perform anesthesia services for anyone except Millenia.

72.     The providers of Orlando Gastroenterology, including Dr. Pothamsetty, perform procedures in Suite 190, and in doing so refer these patients to AAGO for anesthesia services.

73.     AAGO submits claims to Government Healthcare Programs for services it provides to their respective beneficiaries in Suite 190.

74.     Millenia submits claims to Government Healthcare Programs for the facility it provides to their respective beneficiaries in Suite 190.

75.     Orlando Gastroenterology submits claims to Government Healthcare Programs for services it provides to their respective beneficiaries in Suite 190.

76.     As Dr. Pothamsetty is an owner of all three entities—AAGO, Millenia, and Orlando Gastroenterology—Dr. Pothamsetty receives improper remuneration for

every anesthesia service referred by Orlando Gastroenterology and/or Millenia to AAGO in Suite 190.

77.     AAGO does not perform or submit claims for anesthesia services outside of Suite 190.

78.     AAGO is wholly dependent on referrals from Millenia and Orlando Gastroenterology to remain in business.

79.     HHS-OIG Advisory Opinion No. 12-06, posted June 1, 2012, advises that a "company model" arrangement similar to that of Millenia and APS, and that of Millenia and AAGO, may violate the AKS.

### *Improper Self-Referrals of Biopsies*

80.     On January 3, 2011, Orlando Gastroenterology signed an agreement making it the exclusive provider of pathology and laboratory services for Millenia.

81.     Dr. Pothamsetty is an owner of both Orlando Gastroenterology and Millenia, and thus receives remuneration for every laboratory service referred by Millenia to Orlando Gastroenterology, in violation of the AKS and Stark Laws.

82.     Moreover, Dr. Pothamsetty routinely performs a higher rate of biopsies per patient than the other providers at Orlando Gastroenterology.

83.     This higher rate of biopsies, despite seeing patients with similar medical issues as part of the same medical practice, evinces that the profits to be gained from laboratory self-referrals have influenced Dr. Pothamsetty's medical judgment.

### *False Claims and Free Services as Kickbacks to Patients*

84.    Dr. Pothamsetty adjusts billing codes so that his patients will not have to pay any out-of-pockets costs for upper endoscopy or lower endoscopy colonoscopies.

85.    Medicare will reimburse "screening" colonoscopies for low-risk patients, with no patient financial responsibility, once per every ten years. If the patient is "high risk," such as a personal or family history of first-degree relatives (siblings, parents, children) with colon cancer or polyps, Medicare will allow repeat screening every two years. This is part of the patient's "preventative care" treatments covered by Medicare.

86.    Medicare does *not* reimburse 100% for "diagnostic colonoscopies," however, i.e., those that are ordered as a result of patient symptoms and abnormalities. Thus if the physician documents symptoms that necessitate the procedure during the patient visit, he should then code the colonoscopy as diagnostic. The patient may then be responsible for a copayment or deductible.

87.    Screening colonoscopies are billed with HCPCS codes G0105 (high risk) and G0121 (low risk). Colonoscopies are billed under CPT codes 45378-45398. Modifier PT is added to the CPT code if it was scheduled as a screening test but converted to diagnostic; Modifier-33 may also be appended to ensure that all procedures are deemed preventative and thus the patient is not required to pay.

88.    On some occasions, if Dr. Pothamsetty determines that a patient needs a diagnostic colonoscopy, and the patient is eligible for a screening colonoscopy, he

will code the procedure as a screening colonoscopy so that Medicare will reimburse the entire amount.

89.    Dr. Pothamsetty has told patients he will do this so they will agree to the colonoscopy procedure.

90.    The submission of claims falsely identifying colonoscopies as screening rather than diagnostic constitutes a kickback to the patient to incentivize them to have the procedure.

91.    The submission of claims falsely identifying colonoscopies as screening rather than diagnostic further causes monetary harm to Medicare, which reimburses a higher total amount for the procedure.

92.    From February 27 through March 1, 2019, an employee of Surgery Partners met with Millenia management, including the Revenue Cycle Liaison and Regional Director to discuss this issue, and provided them with approximately thirty pages of colonoscopies that Dr. Pothamsetty had improperly coded as screening that were actually diagnostic.

93.    Dr. Pothamsetty has continued to engage in this scheme even after that meeting took place.

94.    DON Rodriguez has told Relator that Dr. Pothamsetty will perform free procedures for any provider who refers him business.

95.    These free procedures constitute kickbacks to the referring providers in violation of the AKS, tainting all claims resulting from referrals made by these providers.

## COUNT I
## VIOLATION OF 31 U.S.C. § 3729(a)(1)(A) – ANESTHESIA
### (All Defendants)

96.    Relator hereby incorporates and realleges herein the allegations set forth in Paragraphs 1-23, 33-79.

97.    As set forth above, Defendants Srikiran Pothamsetty, M.D.; Orlando Gastroenterology, P.A.; Millenia Surgery Center, L.L.C.; Anesthesia Associates of Greater Orlando, LLC; Anesthesiology Professional Services, Inc., and Surgery Partners knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

98.    Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. 31 U.S.C. § 3729.

99.    Relator is entitled to reasonable attorneys' fees and costs, pursuant to 31 U.S.C. § 3730(d)(1).

## COUNT II
## VIOLATION OF 31 U.S.C. § 3729(a)(1)(A) – BIOPSIES
### (Defendants Pothamsetty, Orlando Gastroenterology, Millenia, and Surgery Partners)

100.    Relator hereby incorporates and realleges herein the allegations set forth in Paragraphs 1-52, 80-83.

101.    As set forth above, Defendants Srikiran Pothamsetty, M.D.; Orlando Gastroenterology, P.A.; Millenia Surgery Center, L.L.C.; and Surgery Partners knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

102.    Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. 31 U.S.C. § 3729.

103.    Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## COUNT III
## VIOLATION OF 31 U.S.C. § 3729(a)(1)(A) – KICKBACKS TO PATIENTS AND REFERRING PROVIDERS
### (Defendants Pothamsetty, Orlando Gastroenterology, Millenia, and Surgery Partners)

104.    Relator hereby incorporates and realleges herein the allegations set forth in Paragraphs 1-52, 84-95.

105.    As set forth above, Defendants Srikiran Pothamsetty, M.D.; Orlando Gastroenterology, P.A.; Millenia Surgery Center, L.L.C.; and Surgery Partners knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

106.    Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. 31 U.S.C. § 3729.

107.    Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## COUNT IV
## VIOLATION OF 31 U.S.C. § 3729(a)(1)(C)
### (All Defendants)

108.   Relator hereby incorporates and realleges herein the allegations set forth in Paragraphs 1-23, 33-79.

109.   As set forth above, Defendants Srikiran Pothamsetty, M.D.; Orlando Gastroenterology, P.A.; Millenia Surgery Center, L.L.C.; Anesthesia Associates of Greater Orlando, LLC; Anesthesiology Professional Services, Inc., and Surgery Partners conspired to violate the federal FCA, in violation of 31 U.S.C. § 3729(a)(1)(C).

110.   Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. 31 U.S.C. § 3729.

111.   Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## COUNT V
### VIOLATION OF FLORIDA FALSE CLAIMS ACT
### SECTION 68.082(2)(a), FLORIDA STATUTES - ANESTHESIA
### (All Defendants)

112.   Relator hereby incorporates and realleges herein the allegations set forth in Paragraphs 1-23, 33-79.

113.   As set forth above, Defendants Srikiran Pothamsetty, M.D.; Orlando Gastroenterology, P.A.; Millenia Surgery Center, L.L.C.; Anesthesia Associates of Greater Orlando, LLC; Anesthesiology Professional Services, Inc., and Surgery Partners knowingly presented, or caused to be presented to the Florida Medicaid program numerous false or fraudulent claims for payment or approval, in violation of section 68.082(2)(a), Florida Statutes.

114.   Due to Defendants' conduct, the State of Florida has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. Section 68.082(2), Florida Statutes.

115.   Relator is entitled to reasonable attorneys' fees, costs, and expenses. Section 68.085, Florida Statutes.

## COUNT VI
## VIOLATION OF FLORIDA FALSE CLAIMS ACT
## SECTION 68.082(2)(a), FLORIDA STATUTES – BIOPSIES
## (Defendants Pothamsetty, Orlando Gastroenterology, Millenia, and Surgery Partners)

116.   Relator hereby incorporates and realleges herein the allegations set forth in Paragraphs 1-52, 80-83.

117.   As set forth above, Defendants Srikiran Pothamsetty, M.D.; Orlando Gastroenterology, P.A.; Millenia Surgery Center, L.L.C.; Anesthesia Associates of Greater Orlando, LLC; Anesthesiology Professional Services, Inc., and Surgery Partners knowingly presented, or caused to be presented to the Florida Medicaid program numerous false or fraudulent claims for payment or approval, in violation of section 68.082(2)(a), Florida Statutes.

118.   Due to Defendants' conduct, the State of Florida has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. Section 68.082(2), Florida Statutes.

Relator is entitled to reasonable attorneys' fees, costs, and expenses. Section 68.085, Florida Statutes.

## COUNT VII
## VIOLATION OF FLORIDA FALSE CLAIMS ACT

## SECTION 68.082(2)(a), FLORIDA STATUTES – KICKBACKS TO PATIENTS AND REFERRING PROVIDERS
### (Defendants Pothamsetty, Orlando Gastroenterology, Millenia, and Surgery Partners)

119.    Relator hereby incorporates and realleges herein the allegations set forth in Paragraphs 1-52, 84-95.

120.    As set forth above, Defendants Srikiran Pothamsetty, M.D.; Orlando Gastroenterology, P.A.; Millenia Surgery Center, L.L.C.; Anesthesia Associates of Greater Orlando, LLC; Anesthesiology Professional Services, Inc., and Surgery Partners knowingly presented, or caused to be presented to the Florida Medicaid program numerous false or fraudulent claims for payment or approval, in violation of section 68.082(2)(a), Florida Statutes.

121.    Due to Defendants' conduct, the State of Florida has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. Section 68.082(2), Florida Statutes.

122.    Relator is entitled to reasonable attorneys' fees, costs, and expenses. Section 68.085, Florida Statutes.

### COUNT VIII
### VIOLATION OF FLORIDA FALSE CLAIMS ACT
### SECTION 68.082(2)(c), FLORIDA STATUTES
### (All Defendants)

123.    Relator hereby incorporates and realleges herein the allegations set forth in Paragraphs 1-23, 33-79.

124.    As set forth above, Defendants Srikiran Pothamsetty, M.D., Orlando Gastroenterology, P.A.; Millenia Surgery Center, L.L.C.; Anesthesia Associates of

Greater Orlando, LLC, and Surgery Partners conspired to commit a violation of the Florida FCA, in violation of Fla. Stat. § 68.082(2)(c), Florida Statutes.

125. Due to Defendants' conduct, the State of Florida has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. Section 68.082(2), Florida Statutes.

126. Relator is entitled to reasonable attorneys' fees, costs, and expenses. Section 68.085, Florida Statutes.

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendants:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States the maximum civil penalty for each of the false claims and statements;

(c) awarding the State of Florida treble damages sustained by it for each of the false claims;

(d) awarding the State of Florida the maximum civil penalty for each of the false claims and statements;

(e) awarding Relator thirty percent (30%) of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(f) awarding Relator her litigation costs and reasonable attorneys' fees; and

(g) granting such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relators hereby respectfully demand trial by jury on all issues and counts triable as of right before a jury.

Dated:  May 31, 2019

Respectfully submitted,

*Jill S. Schwartz, Esquire*

Jill S. Schwartz, Esquire
Florida Bar No. 523021
Christopher A. Pace, Esquire
Florida Bar No. 676721
Lauren R. Robertson, Esquire
Florida Bar No. 0109236
John M. Hunt, Esquire
Florida Bar No. 91168
**Jill S. Schwartz & Associates**
655 West Morse Boulevard, Suite 212
Winter Park, Florida 32789-3745
Telephone:  (407) 647-8911
Facsimile:  (407) 628-4994
jschwartz@schwartzlawfirm.net
cpace@schwartzlawfirm.net
lrobertson@schwartzlawfirm.net
jhunt@schwartzlawfirm.net

Julie Bracker, Esquire
Georgia Bar No. 073803
Jason Marcus, Esquire
Georgia Bar No. 949698
**Bracker & Marcus LLC**
3225 Shallowford Road, Suite 1120
Marietta, Georgia 30062
Telephone:  (770) 988-5035
Facsimile:  (678) 648-5544
Julie@fcacounsel.com
Jason@fcacounsel.com

## VERIFICATION

Personally appeared before the undersigned, JENNIFER RODRIGUEZ, who being first duly sworn, deposes and says that the allegations of this False Claims Act Complaint and Demand for Jury Trial consisting of Paragraphs 1 through 126, inclusive, are true and correct to the best of her knowledge, information, and belief.


JENNIFER RODRIGUEZ


STATE OF FLORIDA        )

COUNTY OF ORANGE     )


The foregoing instrument was acknowledged before me this 30th day of

May          , 2019, by JENNIFER RODRIGUEZ, who is personally known to me or

who has produced DRIVERS LICENSE    as identification, and who did take an

oath.

NORKA COROMOTO PALACIOS
Notary Public, State of Florida
Commission# GG 252510
My comm. expires Aug. 26, 2022

_____
Notary Public--State of Florida at Large

My Commission Expires: AUGUST 26, 2022